**IN THE UNITED STATES BANKRUPCTY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**(Atlanta)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-59309-pwb |
| BUTCH THOMPSON ENTERPRISES, INC., | ) | |
| | ) | |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Paul W. Bonapfel |
| _____ | ) | _____ |
| | ) | |
| KLC FINANCIAL, LLC | ) | |
| | ) | |
| Movant, | ) | |
| vs. | ) | **CONTESTED MATTER** |
| | ) | |
| BUTCH THOMPSON ENTERPRISES, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that KLC Financial, LLC ("KLC" or "Movant") has filed a Motion for Relief from Automatic Stay (the "Motion") and related papers with the Court seeking an order lifting the stay as to Prologis.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at **10:15 AM** on **December 11, 2024,** in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings.  You should read these pleadings carefully and discuss them with your attorney if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk before the hearing.  The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  November 21st, 2024               **Robbins Alloy Belinfante Littlefield LLC**

                                          */s/ Craig G. Kunkes*
                                          Craig G. Kunkes
                                          Georgia Bar No. 963594
                                          ckunkes@robbinsfirm.com
                                          Melanie C. Papadopoulos
                                          Georgia Bar No. 291458
                                          mpapadopoulos@robbinsfirm.com
                                          500 14th Street, N.W.
                                          Atlanta, Georgia  30318
                                          Telephone: (678) 701-9381
                                          Facsimile:  (404) 856-3255


                                          *Counsel for Movant KLC Financial, LLC*

**IN THE UNITED STATES BANKRUPCTY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(Atlanta)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-59309-pwb |
| BUTCH THOMPSON ENTERPRISES, INC., | ) ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | _____ |
| | ) | |
| KLC FINANCIAL, LLC | ) | |
| | ) | |
| Movant, | ) | |
| vs. | ) | **CONTESTED MATTER** |
| | ) | |
| BUTCH THOMPSON ENTERPRISES, INC., | ) ) | |
| Respondent. | ) | |
| _____ | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Creditor KLC Financial, LLC ("KLC") hereby files this Motion for Relief from the Automatic Stay (the "Motion") and states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151 and 157.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3. KLC and Butch Thompson Enterprises, Inc. ("Debtor") entered into Master Equipment Lease Agreement Lease No. 16277A (the "Agreement") on April 26, 2024, for the lease of certain equipment. A true and correct copy of the Agreement and its ancillary documents are attached hereto collectively as **Exhibit A**.

1

4.      The equipment leased to the Debtor pursuant to the Agreement was: 2 ea. Kyocera 4054 & Software; 2 ea. Copier Stand; 2 ea. Adobe PDF Print Engine; 2 ea. Color Right Software 5; 2 ea. EFI Printing System 17; 2 ea. HD-16; 2 ea. PH-7110; 2 ea. DP-7120; 2 ea. Fax System 12 w Interface Kit, together with all parts and accessories thereto, all attachments, accessories and additions incorporated therein, attached thereto or used in connection therewith, all replacements and substitutions thereto and all income, proceeds and products thereof (the "Equipment").

5.      KLC is the owner of and possesses a first-priority purchase money security interest in the Equipment. A true and correct copy of KLC's UCC Financing Statement filed in the public records is attached hereto as **Exhibit B**.

## THE DEBTOR'S DEFAULTS

6.      Pursuant to the terms of the Agreement, Debtor promised to pay KLC one advance payment of $28,410.00 and sixty (60) consecutive monthly payments each in the amount of $1,697.79. *See,* Exhibit A.

7.      The Debtor has defaulted under the terms and conditions of the Agreement by failing to make payments to KLC.

8.      KLC has fully performed under the Agreement.

9.      KLC is therefore entitled to immediate possession of the Equipment in accordance with the Agreement; and, separately, pursuant to Article 9 of the Uniform Commercial Code.

10.     The Debtor remains in possession of the Equipment and has failed and refused to surrender possession of the Equipment to KLC.

2

11.     KLC also accelerated all amounts due from the Debtor pursuant to the Default and Remedies provisions contained in the Agreement.  Exhibit A, Lease Agreement at ¶¶ 21, 22. The amount the Debtor owes to KLC under the Agreement is $100,169.61.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

12.     On September 3, 2024, the Debtor petitioned this Court for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Petition Date").

13.     The Automatic Stay provisions contained in §362(a) of the Bankruptcy Code restrain KLC from exercising rights and remedies against property of the Debtor's estate.

14.     Section 362(d)(2) of the Bankruptcy Code provides, in pertinent part, that:

> "…(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A)      the debtor does not have an equity in such property; and
>>> (B)      such property is not necessary for an effective reorganization."

16.     The Debtor has failed to pay for the Equipment since before the Petition Date.

17.     The Debtor does not seek, nor has it shown, or offered to show, that the Equipment is necessary for an effective reorganization.

18.     The Agreement requires that the Debtor keep the Equipment insured against all risks of loss and that "All such insurance shall name Lessor as additional insured and loss payee and Lender shall be listed on any certificates of insurance as KLC Financial, LLC, and its successors and assigns and shall be in form and amount and with insurers satisfactory to Lessor."

3

*See*, Exhibit A, Lease Agreement, ¶ 9.  KLC has not been provided with evidence that the Debtor has maintained or is maintaining appropriate insurance on the Equipment as agreed in paragraph 9 of the Agreement.

19.    The estimated value of the Equipment is $94,700.00; consequently, the Debtor has no equity in the Equipment.

20.    The value of the Equipment is decreasing due to general market conditions, ordinary depreciation and the wear and tear caused by the Debtor's operation and use thereof, if any.

21.    Accordingly, this Court should grant KLC relief from the automatic stay to allow KLC to recover the Equipment; and, further, the Court should waive Rule 4001(a)(3) so that KLC may immediately implement this Court's Order and promptly mitigate its losses.

WHEREFORE, KLC Financial, LLC respectfully requests this Court enter an order:

a)    That the automatic stay arising pursuant to Section 362(a) of the Bankruptcy Code (to the extent it applies) is hereby lifted to permit KLC Financial, LLC, its successors in interest or assigns, to enforce its contractual and judicial remedies to recover and liquidate the following Equipment:

2 ea. Kyocera 4054 & Software; 2 ea. Copies Stand; 2 ea. Adobe PDF Print Engine; 2 ea. Color Right Software 5; 2 ea. EFI Printing System 17; 2 ea. HD-16; 2 ea. PH-7110; 2 ea. DP-7120; 2 ea. Fax System 12 w Interface Kit, together with all parts and accessories thereto, all attachments, accessories and additions incorporated therein, attached thereto or used in connection therewith, all replacements and substitutions thereto and all income, proceeds and products thereof;

b)    That the Debtor be directed to turnover the Equipment to KLC within five (5) days of the entry of an Order lifting the automatic stay;

c)    The provisions of Bankruptcy Rule 4001(a)(3) shall not apply to this Order; and

d)    For such other and further relief as this Court deems just and proper.

DATED this 21st day of November, 2024.

By:     /s/    *Craig G. Kunkes*
       Craig G. Kunkes
       Georgia Bar No. 963594
       ckunkes@robbinsfirm.com
       Melanie C. Papadopoulos
       Georgia Bar No. 291458
       mpapadopoulos@robbinsfirm.com
       500 14th Street, N.W.
       Atlanta, GA  30318
       Telephone: (678) 701-9381
       Facsimile: (404) 856-3255

       *Counsel for Movant KLC Financial, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**(Atlanta)**

| | |
|---|---|
| IN RE:                   ) | Case No. 24-59309-pwb |

```
IN RE:                            )
                                  )        Case No. 24-59309-pwb
BUTCH THOMPSON ENTERPRISES,       )
INC.,                             )
                                  )        Chapter 7
            Debtor.               )
_____ )  _____
                                  )
KLC FINANCIAL, LLC                )
                                  )
            Movant,               )
vs.                               )        CONTESTED MATTER
                                  )
BUTCH THOMPSON ENTERPRISES,       )
INC.,                             )
            Respondent.           )
_____ )
```

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of November, 2024, a true and correct copy of the foregoing **NOTICE OF HEARING** together with **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** was electronically filed with the United States Bankruptcy Court for the Northern District of Georgia using the Court's CM/ECF system, which provides notice to all parties having requested electronic notice in this case, and the following parties were served via first class mail on November 21st, 2024:

| | |
|---|---|
| Butch Thompson Enterprises, Inc.<br>PO Box 4655<br>Marietta, GA 30061 | J. Robert Williamson<br>Scroggins, Williamson & Ray, P.C.<br>4401 Northside Parkway, Suite 230<br>Atlanta, GA 30327 |
| S. Gregory Hayes<br>Hayes Financial Consulting, LLC, Ste 555<br>2964 Peachtree Road<br>Atlanta, GA 30305 | Office of the United States Trustee<br>362 Richard Russell Building<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303 |

/s/      *Craig G. Kunkes*

1

# EXHIBIT A



## MASTER EQUIPMENT LEASE AGREEMENT NO. 16277A

This Master Equipment Lease Agreement (the "Agreement" or "Lease") dated as of **4/26/2024** ("Agreement") between KLC **Financial, LLC** ("Lessor"), and **Butch Thompson Enterprises, Inc. dba** (if applicable) ("Lessee").

1. **Lease**. This is a commercial lease whereby Lessor leases to Lessee all of the equipment and property (the "Equipment") described on the schedule(s) to this Lease (each, a "Schedule" or "Schedules"). Each Schedule incorporates all of the terms and provisions of the Lease and shall be construed as a separate and discrete independent lease. The term "Lease" hereinafter refers to this Agreement, its Schedules and any ancillary documents and any amendments thereto.

2. **Initial Term/Monthly Rental Payments**. This Lease will start on the date signed by the Lessee (the "Start Date") and will continue until all Obligations have been satisfied. The "Initial Term" of the Lease is set forth on each Schedule. The Initial Term commences on the date all items of Equipment are accepted in accordance hereof. Lessee shall pay to Lessor the amounts set forth on each Schedule ("Monthly Payment(s)"). The Monthly Payments are payable monthly in advance. Monthly Payments will be due on the **Tenth (10)** day of each month ("Payment Date"), unless Lessee is notified as to an alternative Payment Date in a written addendum to this Lease (singularly or collectively an "Addendum") by Lender. Lessee agrees that any Addendum may be sent by Lessor utilizing any communication channel as authorized by this Lease. The Payment Date starts in the month in which the Start Date occurs or the 10 day of the subsequent month if the Start Date occurs after the 10 day of the month in which the Start Date occurs. If the Start Date falls on a day other than the Payment Date, Lessee must pay an interim payment (an "Interim Rent") calculated by multiplying 1/30th of the Monthly Payment by the number of days between and including the Start Date and the first Payment Date. The interim payment is due on the 10 day of the month, following the Start Date and on the 10 of each subsequent month until the Payment Date unless Lessee is notified by an Addendum otherwise. A monthly transaction fee in the amount of $16.45 shall be added to each payment for maintenance of the Lease. All payments shall be made to Lessor at the address listed on this Lease, or at such address that it designates in writing. Lessee authorizes the insertion into the Lease of any serial numbers and other identification data about the Equipment, as well as other omitted factual matters, as Lessor deems necessary. Any Monthly Payment which is not received by Lessor within 10 days of the Payment Date shall be subject to a service charge of 15% of each overdue payment to compensate Lessor for administration and collection costs (a "Late Payment Servicing Charge"). An NSF fee of $30.00 shall be applied for any Monthly Payment made and returned for insufficient funds. Monthly Payments, Interim Rent payments, Transaction Fees, Late Payment Servicing Charges, taxes and any charge or fee required by this Lease and interest accrued at the Overdue Rate and all other sums due or to become due hereunder plus all insurance and Equipment requirements and all covenants, warranties and duties of Lessee are hereinafter referred to as the Lessee's "Obligations." Time is of the essence for this Lease. Lessor's acceptance of any Obligation shall not be deemed a waiver of Lessee's continuing other Obligations. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum interest rate allowed to be charged or collected under applicable law; therefore, any excess payment, if any, made by Lessee will be applied to any outstanding Obligation and any remaining excess payment will be refunded to Lessee and Lessee and any Guarantor further agree that such remedy is their exclusive relief and that no other relief or remedy for excess interest will be available to Lessee and any Guarantor hereunder.

3. **Estimated Cost of Equipment**. The Monthly Payment for each Schedule may be based on the estimated cost of the Equipment. Accordingly, Lessee authorizes Lessor if necessary to adjust the payment term(s) of a Schedule and/or to insert a more specific description of the Equipment whenever necessary and Lessee shall, upon Lessor's request, execute an Addendum to the Schedule reflecting such change(s).

4. **Lessee's Disclaimer of Warranties**. LESSEE ACKNOWLEDGES THAT: (I) THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE, (II) LESSOR IS NEITHER A MANUFACTURER NOR A DEALER IN PROPERTY OF SUCH KIND AS THE EQUIPMENT, OR ANY EQUIPMENT, (III) NEITHER THE SUPPLIER, VENDOR NOR ANY REPRESENTATIVE OF ANY SUPPLIER OR VENDOR OR ANY MANUFACTURER OF THE EQUIPMENT IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND (IV) LESSOR HAS NOT MADE AND DOES NOT HEREBY MAKE ANY WARRANTY, WHETHER EXPRESS, IMPLIED OR OTHERWISE AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE EQUIPMENT. LESSEE LEASES THE EQUIPMENT "AS-IS" "WHERE-IS" AND WITH ALL FAULTS. NO DEFECT IN, UNFITNESS OF, OR AN INABILITY OF LESSEE TO USE ANY EQUIPMENT, OR THE FAILURE OF THE EQUIPMENT TO BE DELIVERED HOWSOEVER CAUSED, RELIEVES LESSEE FROM ITS OBLIGATION TO PAY MONTHLY PAYMENTS OR FROM ANY OTHER OBLIGATIONS UNDER THE LEASE. Lessor shall not be responsible to Lessee or anyone claiming through Lessee for any damages, direct, consequential, or otherwise, resulting from the delivery, installation, use, operation, performance, existence or condition of the Equipment, or any delay or failure by any vendor or supplier in delivering and/or installing any Equipment or performing any service for Lessee. Nothing herein shall be construed as depriving Lessee of whatever rights Lessor may have against any vendor or supplier of the Equipment. Lessor authorizes Lessee, at Lessee's expense, to assert for Lessor's account during the term of this Lease all of Lessor's rights under any warranty or promise given by a vendor or supplier relating to the Equipment. Lessee may communicate with such vendor or supplier providing the Equipment and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of such warranties or remedies.

5. **Acceptance**. Lessee shall inspect each item of Equipment upon receipt and shall execute a delivery and acceptance acknowledgement form acceptable to Lessor acknowledging the delivery and Lessee's acceptance of the Equipment (an "Acceptance"). Lessee's execution of the Acceptance shall be the conclusive statement that Lessee has inspected and finds the Equipment to be in good condition and repair and in compliance with purchase orders and unconditionally accepts the Equipment and that Lessor is in full compliance with this Lease.

6. **Non-Cancelable Lease; Unconditional Obligations**. THIS LEASE CANNOT BE CANCELED OR TERMINATED EXCEPT BY LESSOR AS PROVIDED HEREIN. ALL THE OBLIGATIONS UNDER THIS LEASE ARE ABSOLUTE, IRREVOCABLE, UNCONDITIONAL AND INDEPENDENT OF ANY CLAIMS INCLUDING BUT NOT LIMITED TO CLAIMS THAT THE EQUIPMENT WAS NOT DELIVERED AND WILL BE DULY PAID AND PERFORMED BY LESSEE WITHOUT PREPAYMENT UNDER THIS LEASE, ABATEMENT, DEDUCTION, SETOFF, OFFSET OR ANY MODIFICATION WHATSOEVER, FOR ANY REASON.

7. **Maintenance**. Lessee shall maintain the Equipment in good operating order and appearance at Lessee's expense and shall protect the Equipment from deterioration, other than ordinary wear and tear, and will not use the Equipment for any purpose other than that for which it was designed. Lessee shall maintain the Equipment as required, recommended or advised by the manufacturer/vendor of the Equipment, and/or by any government agency or regulatory authority and/or according to reasonable and customary business and/or professional practices. LESSEE SHALL NOT REPLACE, ALTER, MODIFY OR OTHERWISE CHANGE THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR.

1

The original document is owned by KLC Financial, Inc. and this image was created on Apr 26, 2024 11:37:37 AM.

8. **Security Deposit**. Lessee's Security Deposit, if any, shall secure Lessee's full and faithful performance of the Obligations. Lessor may apply all or any part of any Security Deposit toward any overdue Obligation. To the extent any portion of the Security Deposit is so applied, Lessee shall promptly restore the Security Deposit to its full amount. Provided no Event of Default has occurred and is continuing, and that Lessee has complied with the Equipment return provisions of a Schedule, a Security Deposit may be applied to the final Monthly Payment, at Lessor's option. Security Deposits may be commingled with Lessor's other funds.

9. **Insurance**. Lessee shall, at its expense, keep the Equipment insured against all risk of loss or physical damage including loss, fire, theft or damage to the Equipment for the full replacement value of the Equipment. Lessee shall also maintain comprehensive public liability insurance against claims for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation or condition of the Equipment with a combined single limit in the minimum amount of $1,000,000.00 together with such other insurance as may be required by law or as may be reasonably requested by Lessor. All such insurance shall name Lessor as <u>additional insured and loss payee</u> and Lessor shall be listed on any certificates of insurance as KLC Financial, LLC and its successors and assigns and shall be in form and amount and with insurers satisfactory to Lessor. Lessee shall furnish to Lessor, within 10 days of request, evidence of the policies of such insurance and renewal thereof. Each insurer must agree, by endorsement upon the policy or policies issued by it, that it will give Lessor not less than 30 days prior written notice before such policy or policies are cancelled or materially altered, and, under the physical damage insurance, (i) that losses shall be payable solely to Lessor, and (ii) that no act or omission of Lessee or any of its officers, agents, employees or representatives, or any other persons shall affect the obligation of the insurer to pay the full amount of any loss. Lessee hereby irrevocably authorizes Lessor, at its option and in its sole discretion, to make, settle and adjust claims under such policy or policies of physical damage insurance and to endorse the name of Lessee on any check or other item of payment for the proceeds thereof. If Lessee fails to maintain such insurance, Lessor shall have the right, but not the obligation, to obtain such insurance at Lessee's expense. Such placement by Lessor will result in an increase in Lessee's Monthly Payments attributable to the premium paid for such insurance and Lessor's costs of obtaining the insurance and applicable service charges and/or fees. Additionally, Lessee agrees to pay Lessor for any month for which the Equipment is not insured or evidence of insurance is not received by Lessor.

10. **Event of Loss; Lessee's Risk of Loss**. As used herein, an "Event of Loss" shall mean any of the following events with respect to any item of the Equipment: (i) the actual or constructive partial or total damage, theft, loss or destruction of the Equipment to such extent as shall make repair thereof uneconomical or shall render such Equipment permanently unfit for its intended normal use; or (ii) the condemnation, confiscation, requisition, seizure, forfeiture or other taking of title to or use of such Equipment. **THE OCCURRENCE OF ANY EVENT OF LOSS SHALL NOT REDUCE OR IMPAIR ANY OF THE OBLIGATIONS WHATSOEVER UNTIL NOTIFIED IN WRITING BY LESSOR**. Lessee bears all risk of loss from the time that risk passes to Lessor from the vendor or supplier of the Equipment until the expiration or termination of the Lease and, where applicable, the return of the Equipment to Lessor. Upon the occurrence of any damage to any Equipment, not constituting an Event of Loss, Lessee, at its cost and expense, will repair and restore such Equipment to substantially the same condition as existed prior to the date of such occurrence (assuming such Equipment was then in the condition required by this Lease). Provided that no Event of Default has occurred, upon receipt of evidence reasonably satisfactory to Lessor of completion of such repairs, Lessor will apply any insurance proceeds it receives on account of such occurrence to the cost of such repairs and restoration; however, if at such time an Event of Default has occurred, Lessor may retain any part or all of such proceeds and apply same to any of the Obligations. Lessee shall notify Lessor in writing within 5 days of the occurrence of an Event of Loss. Following an Event of Loss, Lessee shall within 5 days pay to Lessor an amount equal to the sum of (a) the

accrued but unpaid Monthly Payments and other obligations due under the Lease, plus (b) the present value of all future Monthly Payments to become due under the Lease over the Initial Term, discounted at 2% per annum, plus (c) the Lessor's estimate, as of the time this Lease was entered into, of Lessor's residual interest in the Equipment, and (d) any remaining outstanding Obligations including, but not limited to, attorneys' fees and costs, repossession or storage costs (a, b, c and d together the "Stipulated Loss Value") less the amount of any insurance proceeds or condemnation or similar award received by Lessor on account of such Event of Loss. An Event of Loss shall not extend or otherwise affect the Obligations up to and including the date upon which the full Stipulated Loss Value is received by Lessor, whereupon the Schedule with respect to such Equipment shall terminate. The proceeds of insurance relating to an Event of Loss and any award on account of any condemnation or other taking of Equipment shall be paid to Lessor and applied by Lessor against the Stipulated Loss Value and the Obligations until fully satisfied and the excess balance, if any, of such proceeds or award shall be paid over by Lessor to Lessee provided no breach or default has occurred under any other contract or obligation to Lessor. If Lessee is in such breach or default under another contract or obligation, Lessor may, at its option, apply all or any part of such proceeds to any Obligation Lessee owes to Lessor.

11. **Indemnity**. Lessee shall indemnify and hold Lessor harmless from and against any and all claims, costs, expenses (including attorneys' fees), losses and liabilities arising out of or occasioned by or in connection with (i) the purchase, delivery, installation, acceptance, rejection, ownership, leasing, possession, use, operation, condition, return or disposition of any Equipment including, without limitation, any claim alleging latent or other defects and any claim arising out of strict liability in tort, or (ii) any breach by Lessee of any of the Obligations.

12. **Taxes**. Lessee shall pay when due, and indemnify and hold Lessor harmless from and against, all present and future taxes and other charges (including, without limitation, sales, use, leasing, stamp and personal property taxes, licenses and registration fees) and amounts in lieu of such taxes and charges and any penalties and interest on any of the foregoing, imposed, levied or based upon, in connection with or as a result of the purchase, ownership, delivery, leasing, possession or use of the Equipment or the exercise by Lessee of any option hereunder, or based upon or measured by Monthly Payments or receipts. Lessee authorizes Lessor to add to the amount of each Monthly Payment any tax that may be imposed on or measured by such Monthly Payment. Notwithstanding the foregoing, and unless and until Lessor notifies Lessee in writing to the contrary, Lessee shall file all tax returns covering the Equipment and shall pay the taxes levied or assessed thereon. Lessor has the right, not the obligation, to file personal property tax and pass these charges to the Lessee. Lessee's obligation to pay taxes under this section shall survive the termination of expiration of the Lease.

13. **Notice of Encumbrances and Location Change; Inspection**. Lessee shall give Lessor notice within 5 days of any attachment, judicial process, lien, encumbrance or claim affecting the Equipment, as well as any change in the residency or principal place of business of Lessee or any guarantor of Lessee's Obligations hereunder (a "Guarantor"). Lessor may enter upon any premises where the Equipment is located upon 24 hours' notice to Lessee to inspect or otherwise confirm compliance of Lessee under this Lease.

14. **Title; Additional Assurances**. The Equipment is, and shall remain, the property of Lessor at all times and Lessee shall have no right, title, or interest in the Equipment except as expressly set forth in this Lease. The Equipment shall remain personal property even though installed in or attached to real property. Lessee shall otherwise keep the Equipment free from all liens and encumbrances, except for those of Lessor, and shall defend Lessor's title to the Equipment at its expense. Lessee shall cause the Equipment to be kept marked with labels, plates or other markings requested by Lessor or otherwise required by law. Lessee agrees to keep the Equipment numbered with the identification and/or serial numbers. Lessee will deliver to Lessor any documents and take such further action as Lessor may reasonably request in order to carry out the intent and purpose of this Lease (including, without limitation, lien searches, financing statements, fixture filings and waivers. Lessee hereby authorizes Lessor to file any and all of the same without Lessee's

2

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

authentication. If the cost of filing of any of the aforementioned documents, included but not limited to UCC financing statements, exceeds $100 Lessee shall pay to Lessor the entire cost for filing such documents upon demand from Lessor. Lessee shall provide written notice to Lessor not less than 30 days prior to any contemplated change in the name, the jurisdiction of organization, the address of the chief executive officer of Lessee and/or the location of the Equipment.

**15. Renewal; Purchase; Return.** Provided no Event of Default has occurred and is continuing under the Lease or any Schedule hereto, Lessee shall notify Lessor in advance and in writing not less than 90 days before the last day of the Initial Term the Lessee intends to: (i) renew such Schedule with respect to all, but not less than all of the Equipment thereunder for an additional term of 12 additional months (a "Renewal Term") at the Monthly Payment rate in effect at the end of such Initial Term, or (ii) purchase all, but not less than all, of the Equipment for the fair market purchase price pursuant to the terms of Section 16 below, plus any applicable sales or other taxes payable as a result of such purchase, plus any unpaid Obligation; or (iii) return all, but not less than all, of the Equipment under any Schedule hereto. Lessee's purchase of the Equipment hereunder shall be as-is, where-is, with all faults. IF NONE OF THE ABOVE OPTIONS ARE DULY SELECTED AND EXERCISED BY LESSEE, OR IF LESSEE FAILS TO RETURN THE EQUIPMENT ON OR BEFORE THE LAST DAY OF AN INITIAL TERM AFTER SELECTING OPTION (iii) ABOVE FOR ANY REASON DURING THE INITIAL TERM OR A RENEWAL TERM, THEN LESSEE SHALL BE DEEMED TO HAVE SELECTED OPTION (i) ABOVE. Upon Lessee's election to return the Equipment or upon earlier termination of this Lease for any reason, Lessee, pursuant to Lessor's instructions and at Lessee's sole expense, will cause the Equipment to be deinstalled, packed and shipped fully insured and in accordance with the manufacturer's instructions to the destination specified by Lessor. All returned Equipment shall be in good operating order and appearance, other than normal wear and tear. Lessee shall pay to Lessor, on demand, the cost of any repairs necessary to place the Equipment in the condition required by this Lease which such amount shall be consider part of the Obligations. Lessee's option to purchase the Equipment may not be pledged, assigned or transferred to any party for any reason without Lessor's prior written consent.

**16. Fair Market Value Purchase Option:** Provided that no Event of Default or other event which, with notice or lapse of time or both, would become an Event of Default has occurred and is continuing under the Lease or any Schedule thereof, and provided Lessee has otherwise fully performed all of its obligations under the Lease and any Schedule hereto, Lessee shall have the option to purchase all, but not less than all, of the Equipment identified on the Schedule at the end of the Initial Term or hereof on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, for a cash price equal to the Equipment's then Fair Market Value plus any applicable sales tax) determined as of the end of the Initial Term of the Lease unless otherwise agreed to by the parties and stated in a Schedule to the Lease.. Such purchase by Lessee shall be without recourse to Lessor or any warranty by Lessor, other than a warranty that the Equipment is free and clear of liens and encumbrances resulting by or through acts of Lessor. "Fair Market Value" shall mean a price equal to the amount of value that would be received in an arm's length retail transaction between an informed and willing buyer who is the end-user of such equipment and who is not a dealer, distributor, wholesaler or re-seller of such equipment, and an informed and willing seller under no compulsion to sell such equipment. Furthermore, in determining "Fair Market Value:" (i) the Equipment is assumed to have been maintained in the manner required by the Lease; (ii) the Equipment will be valued on an installed basis; and (iii) the cost of removal from the Equipment's current location will not be included.

**17. Lessee's Warranties and Covenants.** In order to induce Lessor to enter into this Lease, Lessee represents and warrants the following: (a) Disclosures; (i) its applications, financial statements, tax returns and reports which have been or will be submitted to Lessor ("Lessee Information") are and will be, true and correct in all material respects; (ii) as of the date hereof and the date of any Schedule and any lease Start Date, there has been no material adverse change in any matter stated in Lessee Information provided to Lessor; (iii) there are no known

contingent liabilities or liabilities for taxes of Lessee which are not reflected in said financial statements or reports; and, (iv) none of the foregoing omit or omitted to state any material fact; (b) Organization; Lessee's legal name, state of organization and chief executive office is as first set forth herein and Lessee is duly organized, validly existing and in good standing in such state and duly qualified to do business in each state where the Equipment is located; (c) Power and Authority; Lessee has full power, authority and legal right to execute, deliver and perform this Lease and any Schedule thereto, and the execution, delivery and performance hereof has been duly authorized by all necessary action; (d) Enforceability; this Lease and any Schedule or other document executed therewith has been duly executed and delivered by Lessee and constitutes a legal, valid and binding obligation enforceable in accordance with its terms; (e) Consents and Permits; the execution, delivery and performance of this Lease does not require any approval or consent of any stockholders, partners or proprietors or of any trustee or holders of any indebtedness or obligations of Lessee, and will not contravene any law, regulation, judgment or decree applicable to Lessee, or the certificate of organization, partnership agreement or by-laws of Lessee, or contravene the provisions of, or constitute a default under, or result in the creation of any lien upon any property of Lessee under any mortgage, instrument or other agreement to which Lessee is a party or by which Lessee or its assets may be bound or affected; (f) Operations; Lessee shall not: (i) take possession of or operate the Equipment until Lessor has received the applicable Delivery and Acceptance Acknowledgment duly executed by the Lessee; (ii) operate the Equipment except by and through duly trained qualified personnel in the course of Lessee's regular and customary business and; (iii) at any time be in violation of any laws, ordinances, decrees, orders, governmental rules or regulations to which it is subject and Lessee has, or will have, all the licenses, accreditations, permits and regulatory approvals necessary for the operation of its business and the performance of this Lease.

**18. Assignment.** Lessee hereby consents to any assignment by Lessor and any reassignment of this Agreement or the Monthly Payments with or without notice. **LESSEE AGREES THAT THE RIGHTS OF ANY ASSIGNEE SHALL NOT BE SUBJECT TO ANY DEFENSE, SETOFF OR COUNTERCLAIM THAT LESSEE MAY HAVE AGAINST LESSOR, AND THAT ANY SUCH ASSIGNEE SHALL HAVE ALL OF LESSOR'S RIGHTS HEREUNDER, BUT NONE OF LESSOR'S OBLIGATIONS.** Lessor may, at its option, grant a security interest in the Equipment and Lessee's interests shall be subordinate to the rights of Lessor's secured party. Lessee shall not assign the Lease, any Schedule thereto, nor any of Lessee's rights in connection herewith nor may any of Lessee's duties hereunder be delegated to any other person or entity, whether by Lessee's own act or by operation of law, without the prior written consent of Lessor. Lessee further agrees it will not, without the prior written consent of Lessor, allow the Equipment to be used by persons other than duly authorized and trained employees, or to change, modify, rent or sublet any Equipment to others or relocate any Equipment from the designated Equipment Location of a Schedule.

**19. Lessor's Right to Terminate.** At any time prior to Lessee's acceptance of any Equipment, Lessor shall have the right to terminate this Lease with respect to such Equipment.

**20. Lessor's Right to Perform Obligations.** If Lessee fails to perform any Obligation, Lessor may (but need not) make such payment or perform such Obligation. Any expense or cost so incurred by Lessor shall be payable by Lessee to Lessor upon demand, with interest at the Overdue Rate subject to the terms of paragraph 2 of this Agreement.

**21. Events of Default.** An "Event of Default" shall have occurred under this Lease or any Schedule or Lease if: (i) the owner(s) or interest holders of Lessee sell or otherwise transfer the controlling interest in Lessee; (ii) Lessee fails to pay any Monthly Payment, any Obligation or any other payment when due and such failure shall continue for more than 10 days; (iii) any part of the Equipment is sold, transferred, encumbered, or sublet or is attempted to be sold, transferred, encumbered, or sublet; (iv) Lessee or any Guarantor breaches any covenant, representation or warranty made or given by Lessee or Guarantor in this Lease or in any other document furnished to Lessor, or any such representation or warranty

3

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

Copy of the Electronic Original© document managed by the eCore® On-Demand (EOD™) Service.

shall be untrue or, by reason of failure to state a material fact or otherwise shall be misleading; (v) Lessee or any Guarantor fails to perform or observe any other warranty, covenant, condition or agreement to be performed or observed by it hereunder including, but not limited to, Lessee's obligation to provide financial statements in the manner provided in this Lease and such failure or breach of warranty, covenant, condition or agreement continues un-remedied for a period of 30 days after the earlier of (a) the date on which Lessee obtains, or should have obtained knowledge of such failure or breach; or (b) the date on which notice thereof shall be given by Lessor to Lessee; (vi) Lessee or any Guarantor becomes insolvent or bankrupt or makes an assignment for the benefit of creditors or consents to the appointment of a trustee or receiver, or a trustee or receiver shall be appointed for a substantial part of its property without its consent, or any bankruptcy or reorganization or insolvency proceeding shall be instituted by or against Lessee; (vii) Lessee or any Guarantor ceases doing business as a going concern; (viii) Lessee or any Guarantor shall have terminated its legal existence, consolidated with, merged into, conveyed or leased substantially all of its assets to any person or otherwise undergoes a material change in the composition of ownership, stockholders, unit-owners, partners or management including the death, disability or incompetence of any Lessee, Co-Lessee, key shareholder, key member or Guarantor; (ix) Lessee or any Guarantor voluntarily or involuntarily permits the Equipment to become subject to a lien; (x) a Lessee or any of its Guarantors, controlling shareholders, members or officers is criminally indicted or convicted; (xi) Lessee or any Guarantor is in breach of, or in default under, any other loan, lease, finance or other agreement at any time executed with Lessor or with any other lessor or lender, landlord, mortgagee or other obligor including, but not limited to, the agreements and ancillary documents executed in connection with this Lease; (xii) Lessee's failure or refusal to allow an inspection of the Equipment; (xiii) if there exists, in Lessor's sole discretion, a material adverse change in Lessee's, or any Guarantor's hereof, financial position or credit standing; or (xiv) Lessor in good faith deems Lessee or any Guarantor unable to perform the Obligations hereunder.

22. **Remedies.** Upon the occurrence and existence of any Event of Default for 10 days or greater, Lessor may, at its sole option, concurrently or separately without an election of remedies deeded to have been made, do one or more of the following: (i) cancel or terminate this Lease, all Schedules or any other agreements between Lessor and Lessee and all Lessee's rights, but not Lessee's duties or the Obligations; (ii) proceed in court to enforce the performance of the terms of this Lease and/or recover damages for the breach hereof against Lessee and any Guarantor; (iii) directly or by its agent, and without notice of liability or legal process, enter upon any premises where any Equipment or any pledged collateral is located, take possession or render same unusable and either store it on said premises without charge or remove the same (any damages occasioned by such taking of possession, storage or removal being hereby waived by Lessee) repossession or rendering inoperable of the Equipment does not terminate Lessee's Obligations; (iv) instruct Lessee to assemble and deliver the Equipment to such location and to such person(s) or party(ies) Lessor may designate and Lessee shall comply with such instructions promptly in accordance with the return provisions of a Schedule at Lessee's own expense; (v) declare as immediately due and payable and forthwith recover from Lessee, as liquidated damages, an amount equal to the Stipulated Loss Value, plus all unpaid Obligations; and/or exercise any one or more rights and remedies available under the Uniform Commercial Code ("UCC") and/or applicable statutory or common law. In the event of any repossession of any Equipment by Lessor, Lessor may (but need not), without notice to Lessee, (i) hold or use all or part of such Equipment for any purpose whatsoever, (ii) sell all or part of such Equipment at public or private sale for cash or on credit and/or (iii) sell or relet all or part of such Equipment upon such terms as Lessor may solely determine; in each case without any duty to account to Lessee except as herein expressly provided or required by law. **LESSEE WAIVES RIGHTS TO POSSESSION OF THE EQUIPMENT AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT AND ALL CLAIMS OF LOSS ARISING FROM OR OUT OF LESSOR'S RECOVERY OF THE EQUIPMENT.** Lessee shall remain liable,

subject to all provisions of this Agreement, for the balance of all amounts required under this Agreement. Subject to this Agreement, interest shall accrue at the rate of 1½% per month but only to the extent allowed by law on the Obligations that are not timely paid (the "Overdue Rate") and shall continue to accrue until such time as Lessor receives all past due Obligations. A late charge of 15% shall be applied to any Obligation not received within 10 days of its due date but only to the extent permitted by law. An NSF Fee of $30.00 shall be applied for any Monthly Payment made and returned for insufficient funds. No termination, repossession, sale or release or other act by Lessor after default shall relieve Lessee from any of the Obligations. Lessee and any Guarantor shall also pay to Lessor, on demand, all fees, costs and expenses incurred by Lessor as a result of such default including, without limitation, Lessor's reasonable attorneys' fees, including in-house legal costs, appraisers' and brokers' fees and all other expenses and costs of removal, storage, transportation, insurance and disposition of the Equipment. For purposes hereof, the parties agree that attorneys' fees are to be construed broadly to include any attorneys' fees, including in-house counsel fees and paraprofessional fees incurred by Lessor or its assigns, whether or not there is a lawsuit and, if there is a lawsuit, any fees and costs for any proceeding, including any insolvency, collection, class action, appeals or other proceedings and any other legal fee expenditures incurred by Lessor arising out of or related to this Agreement and any related Schedules or Guaranties and/or exercise any one or more of the rights and remedies available under same or any other remedy allowed under the Uniform Commercial Code ("UCC") and/or applicable statutory or common law. In the event that any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Agreement in any action or proceeding in which Lessor seeks to recover such damages. The remedies provided herein in favor of Lessor shall not be exclusive but shall be cumulative and in addition to all other remedies existing at law or in equity, any one or more of which may be exercised simultaneously or successively.

23. **Non-Waiver.** Lessor's failure at any time to require strict performance by Lessee of any provision hereof shall not waive or diminish Lessor's rights thereafter to demand strict performance thereof or of any other provision. None of the provisions of this Lease shall be held to have been waived by any act or knowledge of Lessor, but only by a written instrument executed by Lessor and delivered to Lessee. Waiver of any Event of Default or breach hereof shall not be a waiver of any other or subsequent default.

24. **Communications.** Any notice or other communication required or desired to be given hereunder shall be given in writing and shall be deemed to have been duly given and received when sent by any one of the foregoing methods to the address indicated in the signature block to this Lease: by electronic mail identified in the application, or by first class U.S. mail, postage prepaid, certified mail or by confirmed nationally reputable overnight courier. Lessee agrees to receive Addendums, notices and other communications concerning this Lease via electronic, fax and text messaging.

25. **Financial and Other Information.** Lessee shall furnish to Lessor, at its own cost and expense, financial and other information about the condition and affairs of Lessee and any Guarantor (i) within 45 days of the expiration of each fiscal year of such party or entity, federal and state, tax returns along with unaudited financial statements certified as true and correct, consisting in each case of a balance sheet and income statement all prepared in accordance with generally accepted accounting principles, consistently applied; and (ii) such other information as Lessor may reasonably request from time to time. Lessee agrees that Lessor may share any financial information provided herein with Lessor's participants, funding partners and/or assigns. Each time Lessee requests from Lessor a statement of the outstanding amount of the indebtedness owed under the Agreement, Lessee shall pay Lessor a service fee for each such request to compensate Lender for the costs of administration of such requests.

26. **Choice of Law; Venue.** THIS LEASE, SCHEDULES, RIDERS, ANCILLARY DOCUMENTS AND AMENDMENTS THERETO SHALL BE GOVERNED IN ALL RESPECTS BY THE LAWS OF

4

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

THE STATE OF MINNESOTA. TO INDUCE LESSOR TO EXECUTE THIS LEASE, LESSEE HEREBY AGREES THAT ALL OF ITS ACTIONS OR PROCEEDINGS AGAINST LESSOR OR ITS ASSIGNS ARISING DIRECTLY OR INDIRECTLY FROM THIS LEASE SHALL BE LITIGATED EXCLUSIVELY IN COURTS (STATE OR FEDERAL) HAVING SITUS IN THE STATE OF MINNESOTA AND THE COUNTY OF HENNEPIN UNLESS LESSOR, IN ITS SOLE DISCRETION, WAIVES THIS PROVISION. LESSEE HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LESSOR IN ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF MINNESOTA AND THE STATE IN WHICH THE LESSEE'S PRINCIPAL PLACE OF BUSINESS IS SITUATED OR THE EQUIPMENT IS LOCATED. LESSEE WAIVES ANY CLAIM THAT ANY ACTION INSTITUTED BY LESSOR HEREUNDER IS IN AN INCONVENIENT OR IMPROPER FORUM.

27. **Security Interest**. To the extent that any of the transactions evidenced by this Agreement or related Schedules are secured transactions, Lessee hereby grants to Lessor a first priority security interest in (a) all Equipment identified in any and all Schedules and all equipment, inventory, accessories, parts, attachments, improvements, accessions, replacements, substitutions, additions and proceeds (including, without limitation, insurance proceeds) thereof; (b) all accounts; chattel paper, payment intangibles, leases, subleases, security deposits or other cash deposits and proceeds relating to any Equipment leased pursuant to this Agreement or any Schedule(s), and (c) all other collateral as to which a security interest has been or is hereinafter granted by Lessee to Lessor in connection with any contractual agreements entered into between the parties and all proceeds thereof (the "Collateral"). Lessee hereby authorizes Lessor to file or record this Agreement or related Schedules or financing statements with respect to Lessor's security interest in the Collateral with any appropriate governmental office in order to perfect such security interest. The security interest created thereunder will terminate when all Obligations of Lessee to Lessor under any Schedule are discharged, and Lessor at the request of Lessee will then execute termination statements and such other documents as may be necessary or appropriate to make clear upon the public records the termination of such security interest. Lessee hereby appoints Lessor its true and lawful attorney, with full power of substitution, to enforce Lessee's rights under the Lease, and to take any action which Lessor may deem necessary or appropriate to protect and preserve the security interest of Lessor.

28. **Lessee Waivers/Finance Lease**. Lessor and Lessee agree that this Lease is a "finance lease" as defined under Article 2A of the UCC and the obligations under this Lease and any Schedule are irrevocable upon the Lessee's acceptance of the Equipment. By executing this Lease, in addition to the representations and waivers of Section 5 hereof, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED BY SECTIONS 2A-508 THROUGH 2A-522 OF THE UCC AS ADOPTED BY THE STATE OF MINNESOTA, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO (I) CANCEL THIS LEASE; (II) REPUDIATE THIS LEASE; (III) REJECT THIS LEASE; (IV) REVOKE ACCEPTANCE OF THE EQUIPMENT; (V) RECOVER DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY OR ANY OTHER REASON; (VI) CLAIM A SECURITY INTEREST IN ANY REJECTED PROPERTY IN LESSEE'S POSSESSION; (VII) DEDUCT ALL OR ANY PART OF CLAIMED DAMAGES RESULTING FROM LESSOR'S DEFAULT; (VIII) ACCEPT PARTIAL DELIVERY OF THE EQUIPMENT; (IX) "COVER" BY MAKING ANY PURCHASE OR LEASE OF EQUIPMENT IN SUBSTITUTION OF THE EQUIPMENT; (X) RECOVER ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING ANTICIPATORY PROFITS, FROM LESSOR, FOR ANY REASON; AND (XI) TO THE EXTENT APPLICABLE BY LAW, LESSEE WAIVES THE RIGHT TO SPECIFIC PERFORMANCE, REPLEVIN, DETINUE OR SEQUESTRATION.

29. **Authorization to Access, Order and Review Personal Credit;**

**Identification Waiver; Permission To Solicit.** Lessee authorizes Lessor to obtain credit bureau reports and make any other credit inquiries that Lessor determines are appropriate. Such authorization shall extend to obtaining a credit profile in considering the application for the extension of credit by Lessor under the Lease and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account; Lessee grants Lessor, its successors assigns and participants, permission to make copies of drivers licenses and other personal identification whether state, government or other issue for all Lessee(s), signor(s), guarantor(s) or any other parties to this Lease. Lessee hereby grants Lessor, its successors, assigns and participants, permission to provide copies of documents and information to any successor or third party that is or becomes a party to this Lease, without notice. Lessee grants Lessor, its successors, assigns and participants permission to allow Lessor to solicit them for business as Lessor may see fit and Lessor may use any legal method to do so including, but not limited to, facsimile transmission, email, telephone, text, and direct mail.

30. **Miscellaneous**. The Lease is not effective and shall impose no obligations on Lessor until it is accepted by Lessor in writing at its offices Minnetonka, Minnesota. This Lease is severable and if any provision of this Lease is held invalid or unenforceable, the remainder of this Lease shall not be affected. The titles to the Sections of the Lease shall not be considered in the interpretation of this Lease. This Lease (including the Schedules) sets forth the entire understanding between the parties and may not be modified except in a writing signed by both parties except in the case of an Addendum changing the Payment Date in which case Lessee expressly agrees that Lessor retains the right to change such dates in its sole reasonable discretion and Lessee waives any right to contest the enforceability of such medication(s) and Lessee's waiver of any such right is a material requirement and consideration of this Lease necessary to facilitate Lessor's efficient and standardized leasing operations. If there is more than one Lessee, the obligations of Lessee hereunder and co-lessees are joint and several. The necessary grammatical changes required to make the provisions hereof apply to corporations, partnerships, limited liability companies and/or individuals, whether male or female, shall in all cases be assumed as though in each case fully expressed. Subject to the terms hereof, this Lease shall be binding upon and inure to the benefit of Lessor and Lessee and their respective personal representatives, successors and assigns. The individuals executing this Lease on behalf of Lessee personally warrant that they are doing so pursuant to due authorization as required by Lessee's articles, bylaws and/or Lessee's membership, partnership or operating agreement. Lessee's representations, warranties, covenants, duties and indemnities hereof survive the expiration or other termination of the Lease.

31. **Counterparts; Delivery of Executed Documents.** This Agreement and any Schedules may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. To the extent that any Schedule constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security or ownership interest intended to be created through the transfer and possession of the Schedule can be done only by the transfer of the "Original" bearing the original ink or electronic signature of Lessor; provided that, if the "Paper Out" process shall have occurred, or if there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this Master Lease or any Schedule, then the "Paper Out" printed version of such document bearing the legend "Original" applied by Lessor shall constitute the sole chattel paper original and authoritative version. Delivery of an executed counterpart of the Agreement by facsimile, e-mail or other electronic means shall be equally as effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart of the Agreement by such electronic means also shall deliver a manually executed counterpart of the Agreement to Lender. The failure to deliver a manually executed counterpart shall not affect the validity, enforceability and binding effect of this Agreement.

32. **USPA Disclosure** To help the government fight the funding of

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

Copy of the Electronic Original® document managed by the Core® On Demand (EOD™) Service.

terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask you for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

**TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY
WAIVES TRIAL BY JURY AND ANY RIGHT OF SETOFF OR
COUNTERCLAIM.**

Dated as of the day and year first above written.

**Lessee:    Butch Thompson Enterprises, Inc.** a S Corporation
organized under the laws of the state of .
**DBA (if applicable):**

DocuSigned by:

Signature _____
(signature of Lessee's duly authorized representative)
215347SF2BD846E...

**Print Name: Judson Conrad Thompson**
**Title: CEO**
**FEIN:**
**Principal Office: 2933 Cherokee St Ste 200,        Kennesaw,  Georgia
30144**
**Lessee's Telephone:**
**E-mail:**

Accepted by Lessor at Minnetonka, Minnesota:

**KLC Financial, LLC,** a Limited Liability Company organized under
the laws of the State of Minnesota, 4350 Baker Rd Suite 400,
Minnetonka, Minnesota 55343
DocuSigned by:

Signature _____

Title: __Fund Mgr/Manager__



The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.



### SCHEDULE NO. 01 TO MASTER EQUIPMENT LEASE AGREEMENT NO. 16277A

This Equipment Lease Schedule (the "Schedule") is hereby made a part of Master Equipment Lease Agreement No. **16277A** dated as of **4/26/2024 | 9:26** as amended, renewed or restated from time to time, the "Lease") entered into between **KLC Financial, LLC** ("Lessor") and **Butch Thompson Enterprises, Inc. dba** (if applicable) ("Lessee"). All terms and conditions of the Lease are incorporated herein as if fully set forth. All capitalized terms herein shall have the same meaning as such terms are defined in the Lease. To the extent the terms of this Schedule may be inconsistent with the Lease, the terms of this Schedule shall control. The Master Equipment Lease Agreement is incorporated herein as if fully set forth.

---

**Vendor:** Pristine Imaging
**Equipment Description:** 2 ea. Kyocera 4054 & Software 2 ea. Copier Stand
2 ea. Adobe PDF Print Engine
2 ea. Color Right Software 5
2 ea. EFI Printing System 17
2 ea. HD-16
2 ea. PH-7110
2 ea. DP-7120
2 ea. Fax System 12 w Interface Kit

---

All of the foregoing property, together with all parts and accessories thereto, all attachments, accessories and additions incorporated therein, attached thereto or used in connection therewith, all replacements and substitutions thereto and all income, proceeds and products thereof being collectively referred to as the "Equipment."

**Equipment Location:** 2933 Cherokee St Ste 200, Kennesaw, GA 30144

**Total Equipment Cost: $94,700.00**

**Cap Reduction (if applicable):**

**Total Finance Amount: $94,700.00**

**Initial Term:** 1 + 60

**Security Deposit:**

**Advance Payment:** 1 - $28,410.00 plus applicable tax

**Monthly Payments:** $1,697.79 each plus any applicable taxes and fees

**Monthly Payment Date:** Each Payment shall be due on the 10 day of each month

**Monthly Payments Remitted to/via:** ACH

### Additional Provisions

**1. Lessor's Interest:** The Equipment is and at all times shall remain the sole and exclusive property of Lessor, and Lessee shall have no right, title or interest therein. This is intended to be a true lease and not a lease intended for or in the nature of a security interest; this Schedule is intended to be a "finance lease" as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). To protect Lessor's rights in the Equipment in the event the Lease is determined to be a security agreement, Lessee hereby grants to Lessor a first priority security interest in the Equipment, as more fully described in the Lease and in any invoices that contain descriptions of the Equipment, and all proceeds and products thereof. Lessee shall cause the Equipment to be kept marked in a prominent place with labels, plates or other markings as requested by Lessor or otherwise required by law or deemed necessary by Lessor for the protection of title, rights or ownership of Lessor to the Equipment. Lessee

agrees to keep the Equipment numbered with the identification or serial numbers specified in the Acceptance Certificate, if any, and to execute and file UCC financing statements and any and all other instruments necessary or appropriate to perfect or record Lessor's interest in the Lease or the payments due hereunder and the Equipment, including obtaining landlord and mortgagee waivers and estoppel certificates upon Lessor's request.

**2. Alterations.** Lessee shall not make or permit any changes or alterations to the Equipment without Lessor's prior written consent. Pursuant to the Lease, the Payment Date may be modified by Lessor via Addendum. All accessories, replacements, parts and substitutions to or for which are added or attached to the Equipment shall become the property of Lessor and shall be included in the definition of Equipment.

**Agreed:** Dated as of **4/26/2024 | 9:26** AM PDT

**Lessee: Butch Thompson Enterprises, Inc.
DBA (if applicable):**

Signature [signed: *Judson Conrad Thompson*]
(Signature of Lessee's duly authorized representative)
2163475F2BD846E...

**Print Name of Signor: Judson Conrad Thompson**
**Title: CEO**
**Lessee's FEIN:** ▇▇▇
**Lessee's Address: 2933 Cherokee St Ste 200, Kennesaw, Georgia 30144**
**Lessee's Telephone:** ▇▇▇

Accepted by Lessor at Minnetonka, Minnesota

**KLC Financial, LLC**

Signature [signed: *Heather Lenoke*]
Title ▇▇▇

4/26/2024 9:36 AM PDT

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

1

   
DocuSign Envelope ID:

Copy of the Electronic Original® document managed by the eCore® On-Demand (EOD™) Service.



### DELIVERY AND ACCEPTANCE ACKNOWLEDGEMENT TO MASTER LEASE AGREEMENT

Master Equipment Lease No.: **16277A** (the "Lease")
Master Equipment Lease Schedule No.: **01** (the "Schedule")

Equipment Supplier(s):

**Pristine Imaging**

Equipment Description:

**2 ea. Kyocera 4054 & Software 2 ea. Copier Stand
2 ea. Adobe PDF Print Engine
2 ea. Color Right Software 5
2 ea. EFI Printing System 17
2 ea. HD-16
2 ea. PH-7110
2 ea. DP-7120
2 ea. Fax System 12 w Interface Kit**

Location of Lessee's Acceptance of Equipment:
**2933 Cherokee St Ste 200, Kennesaw, GA 30144**

The undersigned Lessee hereby acknowledges and agrees that the property (the "Equipment") leased to it by KLC Financial, LLC ("Lessor") pursuant to the above-referenced Lease and Schedule:

1.     Has been delivered and as of this date is unconditionally and irrevocably accepted;
2.     Has been delivered in full compliance with the terms of the Lease; and
3.     Was not manufactured, distributed or sold by Lessor.
4.     Lessee further acknowledges that in addition to the covenants, warranties, representations and acknowledgments of the Lease that Lessor has made no warranties or representations with respect to the quality, condition or performance of the Equipment.
5.     In the event the Equipment does not perform as expected or represented, Lessee shall look solely to the Equipment Supplier(s) for satisfaction of and/or performance of any covenants and warranties with respect to the Equipment including, but not limited to, its quality or performance.

6.     No defect in, unfitness of, or an inability of Lessee to use the Equipment for any reason will relieve Lessee's obligation to pay all Rental Payments to Lessor and to otherwise perform all of the other duties and obligations of the Lease.
7.     Lessee will continue to remit all Rental Payments to Lessor in accordance with the Lease, free of any setoff, counterclaim or defense.
8.     Lessor shall not be responsible to Lessee, or anyone claiming through Lessee, for any damages, direct, consequential, or otherwise, resulting from the delivery, installation, use, operation, performance or condition of the Equipment, or any delay or failure by an Equipment Supplier(s) in delivering and/or installing any Equipment or performing any service for Lessee.
9.     Unless otherwise specified on a Schedule, the Commencement Date under such Schedule is, and the obligation of the undersigned to pay Rental Payments with respect to said Equipment commences on, the date of this Acknowledgement.
10.     All capitalized terms herein shall have the same meaning as such terms are defined in the Lease. To the extent the terms of the Master Equipment Lease Schedule may be inconsistent with the Lease, the terms of the Schedule shall control. All terms and conditions of the Lease and Schedule are incorporated herein as if fully set forth.

**AGREED:**

Dated as of _4/26/2024 | 9:26 AM 2̶0̶DT_.

**Lessee: Butch Thompson Enterprises, Inc.
DBA (if applicable):**

Signature <img> _Judson Conrad Thompson_
(signature of Lessee's duly authorized representative)

**Print Name: Judson Conrad Thompson
Title: CEO
FEIN:** ▮▮▮▮
**Principal Office: 2933 Cherokee St Ste 200, Kennesaw, Georgia 30144
Lessee's Telephone:** ▮▮▮▮
**E-mail:**

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

DocuSign Envelope ID: Case 24-59309-pwb    Doc 45    Filed 11/21/24 Entered 11/21/24 14:46:50 Desc Main Document    Page 19 of 22



### CERTIFICATE OF SECRETARY FOR CORPORATION NO. 16277A

The undersigned hereby certifies to KLC Financial, LLC and its successors and assigns (hereinafter collectively "KLC") that he/she is the Secretary of **Butch Thompson Enterprises, Inc.,** a corporation duly organized, validly existing and in good standing under the laws of the State of **GA** (the "Corporation"), that the following is a true and accurate transcript of resolutions duly, validly and lawfully adopted by the Board of Directors of said Corporation on the **4/26/2024 | 9:26 AM, PDT** acting in accordance with the articles and by-laws of said Corporation, and that said resolutions have not been amended, rescinded, modified or revoked, and are now in full force and effect.

RESOLVED, that the President, Treasurer, Secretary or any other officer of this Corporation from time to time serving each acting or signing singly, be and hereby is authorized in the name and on behalf of this Corporation to enter into contracts with KLC: (i) to borrow money, acquire personal property or real estate by purchase or lease and otherwise obtain extensions of credit from time to time; (ii) to guaranty payment of third party(s) indebtedness; (iii) to secure such borrowings, acquisitions, guaranties and extensions of credit by granting security interests and liens on any or all of this Corporation's assets; and (iv) in connection with the foregoing to enter into, execute and deliver any leases, security instruments, guaranties or other agreements, which now or may from time to time hereafter appear advisable as evidenced by the signature of any of said officers thereon.

FURTHER RESOLVED, that each of said officers of this Corporation be and hereby is authorized to execute and deliver all other documents and to do and perform all other acts and deeds that may be requisite or necessary to carry fully into effect the foregoing resolution; and all prior acts and deeds of each said officer in connection therewith are hereby in all respects approved, ratified and confirmed.

FURTHER RESOLVED, that KLC is authorized to rely upon the aforesaid resolutions until receipt by it of written notice of any change, which change of whatever nature shall not be effective as to KLC to the extent that it has theretofore relied upon the aforesaid resolutions in the above form.

I further certify that the following persons are duly elected or appointed officers of said Corporation and hold the office indicated opposite their respective names, and the signatures appearing opposite their respective names are the genuine signatures of such persons.

| Judson Conrad Thompson | Owner/CEO | DocuSigned by: Judson Conrad Thompson |
|---|---|---|
| Print Name | Title | Signature 2153475F2BD846E |
| | | |
| Print Name | Title | Signature |
| | | |
| Print Name | Title | Signature |
| | | |
| Print Name | Title | Signature |

IN WITNESS WHEREOF, the undersigned has signed this Certificate of Secretary of said Corporation this **4/26/2024 | 9:26 AM, PDT**

| Judson Conrad Thompson | Secretary | DocuSigned by: Judson Conrad Thompson |
|---|---|---|
| Print Name | Title | Signature 2153475F2BD846E |

The original document is owned by KLC Financial, Inc. and this copy was created on Apr 26, 2024 11:37:37 AM.

# EXHIBIT B

# iLien Cover Page

Date Printed:  04/26/2024

Debtor:
Butch Thompson Enterprises, Inc.
2933 Cherokee St Ste 200
Kennesaw, GA  30144

Bill Code:  a31Qm0000002oS9IAI
lease num:  16277A-01
REF3:  006Qm000007hgBGIAY
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  91005305
Order Confirmation #:  98598151

UserID:  345544
UserName:  CREDIT KLC
Number of Collateral Pages Attached:  0

Transaction Type:  Original
Jurisdiction:  GA, Barrow

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 007-2024-020863
File Date   : 26-Apr-2024

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

| B. E-MAIL CONTACT AT SUBMITTER (optional) |
| uccfilingreturn@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)     25790 - KLC FINANCIAL,

Lien Solutions                          **98598151**
P.O. Box 29071
Glendale, CA  91209-9071                **GAGA**

File with: Barrow, GA
SEE BELOW FOR SECURED PARTY CONTACT INFORMATION          THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Butch Thompson Enterprises, Inc. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2933 Cherokee St Ste 200 | Kennesaw | GA | 30144 | USA |

2. DEBTOR'S NAME: Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KLC Financial, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4350 Baker Rd, Suite 100 | Minnetonka | MN | 55343 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ALL EQUIPMENT LISTED ON MASTER EQUIPMENT LEASE NUMBER 16277A. FILING INCLUDES ALL EQUIPMENT LISTED ON MASTER
EQUIPMENT LEASE NUMBER 16277A.  INCLUDING BUT NOT LIMITED TO: Equipment listed on Schedule 01:
New  2 ea. Kyocera 4054 & Software
2 ea. Copier Stand
2 ea. Adobe PDF Print Engine
2 ea. Color Right Software 5
2 ea. EFI Printing System 17
2 ea. HD-16
2 ea. PH-7110
2 ea. DP-7120
2 ea. Fax System 12 w Interface Kit as well as any accessories, parts, improvements, accessions, replacements, substitutions, additions, and proceeds.

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check **only** if applicable and check **only** one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
98598151                    a31Qm0000002oS9IAI                    16277A-01

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282